I think the fundamental issue here in this case is something that's important and is recurring. It's been recurring ever since Title VII and the McDonnell-Douglas case got decided. And that is the potential for McDonnell-Douglas to be taken too rigidly, or in the words of Fernco, rigid, mechanical, or ritualistic. And it's understandable at a certain level why this would happen. There are at least often waves of discrimination cases. Many of them are pro se. Many of them are handled by attorneys who don't practice employment law. And McDonnell-Douglas can be used as a way to dispose of a lot of these cases easily. But it also, it lends itself to a rigid, mechanical application of the test. The real question in the end is, is there sufficient evidence that a reasonable jury could conclude that the adverse employment action was taken because of discrimination? JUSTICE SOTOMAYOR. Counsel, let me ask you, since you've used the terminology, the rigid and mechanical test of McDonnell-Douglas, and I read your brief, you very compellingly argue that the district court should not have employed the test in the way that it did. Is there a case, Fifth Circuit or Supreme Court case, that you can cite to us that applies the test precisely the way you would like us to apply it in this case? JUSTICE SCALIA. I couldn't find one that actually had this fact pattern. The JUSTICE SOTOMAYOR. Are you asking us to sort of loosen the rigors of the test? I mean, it sounds like you're asking us to do something, maybe break a little new ground in how we apply the test. JUSTICE SCALIA. I really don't think so. I really think what you come down to here is the ultimate question of why was Mr. DeBassi terminated. And what we're really having here is the artificial subdivision of the case, and that is what is unique here. The idea that we take it one piece at a time, I guess the old Johnny Cash song, that you wind up with a car that you built one piece at a time. JUSTICE SCALIA. Remind me, counsel, did the plaintiff assert separate claims for each of the reclassification, the failure to get this other job, and then the things that led up to his termination? Or did he just plead a claim, I was terminated because of my age? JUSTICE SCALIA. Yes, that's correct. For example, if you go back to the original move when they moved him from gasoline coordinator to heavy oil coordinator, would that even have been an adverse employment action? Now, this Court recently in Embank had the Dallas County case, the jailer case, which has moved away from the ultimate employment decision standard. But at the time, and even under that standard, I mean, he was moved from gasoline coordinator to heavy oil coordinator. His pay was the same. He was still employed. JUSTICE BREYER. He was actually doing that work. JUSTICE SCALIA. What's that? JUSTICE BREYER. He was actually doing that work. It was sort of a retitling almost. JUSTICE SCALIA. Right. And he would say that there was a status issue, that he had a lowered status. But whether that would, at the time, whether that would be enough to be an adverse employment action under this Court's precedent is debatable. I'm not even sure you would get there in the Dallas County case. JUSTICE BREYER. Because the argument, as I apprehended, the argument is it's about the termination, which is an adverse employment action, I guess. JUSTICE SCALIA. Right. JUSTICE BREYER. I would push back on that. But all this evidence leading up to it supports this subjective belief that he was terminated because of his age. He was moved out so somebody younger could be moved in, right? He just took several steps. JUSTICE SCALIA. I would push back on the word subjective. Because this isn't just about Mr. DeBassi saying, I subjectively believe this is why I was terminated. But otherwise, I agree with that. All these things are evidence, circumstantial evidence is what we're really talking about. Circumstantial evidence that the reason he was terminated was . . . JUSTICE BREYER. You make that argument in the district court? JUSTICE SCALIA. Absolutely. That's the whole point. The circumstantial evidence. We start with the notion that Motiva, which was originally owned by Shell and Aramco, and Shell got bought out. And after that, they brought in new supervisors during 2018, Mr. Burnham and Mr. Moore. And they did a number of things. Mr. DeBassi was not the only older employee who got pushed out. There were a couple others, which we cite to in the pleadings. One employee was over 60 years old and he was replaced by somebody, I believe, in their 30s. So there were other things happening. Then we have their internal documents, which show that they wanted to bring in . . . for about . . . in their affidavits, Mr. Moore and Mr. Burnham saying, we were talking about early career employees. But what they . . . JUSTICE KENNEDY. They were big stocks. They were pillars. And the problem is Mr. DeBassi was neither, I guess, in their estimation. JUSTICE SCALIA. Right. And what they said to Mr. DeBassi directly was, we want to run younger employees through. Now, if they had terminated him at that point, this would be a direct evidence case. But they didn't. They told him instead that we were going to make you heavy oil coordinator, and then we're going to move you to E&S advisor, which is an upgrade in status. And the . . . but what we know, we know two things from their own internal documents. Number one, they had no intention of keeping him as heavy oil coordinator after 2019. That's in their documents. They wanted to move him out. And secondly, they now say that there was no E&S advisor position. So in other words, they told him, you know, we're going to put a younger employee in as gasoline coordinator, which is a significant position when you're talking about a refinery like the Motiva plant, which was the . . . I think at the time was the largest gasoline refinery in North America. But they were going to get heavy oil coordinator, but that was . . . you know, with the unspoken intent that they were not going to leave him in that position after 2019. We know that from the documents. So, not to interrupt you on the factual background, but the district court's approach was to take, I guess, the . . . the court subdivided it into four claims, I guess. Right. That's why I asked you what he pled originally. Did he plead separate claims, or did he just plead about his termination? Just termination. And of course, there's a termination claim for age, and then there's termination for disability. Right. So two claims. But so the court treats this as sort of four bases for the claims. Right. So, some of these things, the court says, well, they're not exhausted. They weren't timely raised, and so they can't be considered. I guess . . . so if I follow what you say the approach should have been, is the district court shouldn't have done that. The district court should have looked at the termination and then said, well, is this evidence here enough to support the prima facie case? Because we're really talking about the prima facie case, right? Yes. Didn't go farther. Didn't go to step two or step three of McDonnell Douglas. That's correct. So, what is your best support, I guess, case law, that allows your approach as opposed to what the district court did? Well, I guess I would say just straight up, you know, Fernco, in those cases that you don't apply this in a ritualistic manner. The ultimate question is, is there sufficient evidence from which a reasonable jury could look at these facts and say that Mr. DeBassi was terminated because of his age? And these prior facts are . . . and that's the Amtrak case also, that you can, you know, you can look at all the facts. The 300-day rule doesn't, it's not a, it's not something that cuts off facts. It cuts off claims, for sure. And if we wanted to assert a claim, for example, based on the move to have the oral coordinator on February 1st, that would be barred, absolutely. But that doesn't mean that those facts of what happened prior to the 300-day period are barred. You would look at all the facts. And ultimately, the question is, can a reasonable jury conclude from these facts that Mr. DeBassi was terminated because of his age? And the, we have sufficient evidence going back to 2018 of motive, if you will, that they intended not to keep him. They intended to bring in younger employees. They intended that, or they told him there was an ENS advisor position that they now say didn't even exist. And we, you know, there's also evidence that, you know, that he was told to train his replacement, which he did. And during that period, you know, there was never any complaints about Mr. DeBassi given to him. No one said to him, you know, you're a bad employee, you're not doing your job. You know, they, instead they tried to cobble together various things that could, could be used against him later. Oh, he did have substandard performance reviews, and he had been on a PIP, had he not, before? When he first went to the company, which I think, I could be off, I think it was 2015, 2016, when he first started off at the company, he had some issues. But his current employment, his current evaluation was meets expectations. And he's receiving the president's awards, you know, that we show at Unbrief. You know, they actually give him these crystal statutes. I mean, he was, as, as of 2019, he did not have some substandard performance by any of the metrics we normally look at. If the, his evaluation was, I think it was three, 3.0 on a five point scale. The, whatever it was, it was meets expectations. And he was receiving the president's awards at that point, in terms of what his, in what his performance was. He may have had a performance problem, issue in prior years, but those, that was with different supervisors, different circumstances, and he got past that. He had communication issues, I believe was the prior, was the issue back in those prior years. But if we're talking about 2019, no, he did not have performance issues that were documented anywhere or, or at least conveyed to him. So, you know, I guess another way to look at what the district court did, is the district court was thoroughly analyzing the factual allegations. In other words, giving the plaintiff the benefit of the doubt, looking at each of these four bases. If you just look at the termination and how that happened, does this, does the age claim fail, as the district court concluded, like the disability claim failed, because of the, the actual reasons for the firing? In other words, you have this incident where the person who actually did the firing wasn't his supervisor, wasn't involved in this meeting, but he's disrespectful, he's insubordinate, all those sorts of things as the grounds for the termination. I mean, doesn't the claim still fail, regardless of whether the district court's approach in sort of dissecting this a little bit, maybe? Well, of course, the district court didn't reach that particular issue, but I can speak to it anyway. The district court didn't reach the pretext issue, which is what you're getting into, whether the— It stopped at prima facie case, but can we nonetheless affirm, because we look at the grounds for being, for why he was fired, if there's no evidence to contradict the company's reasons, doesn't the claim fail? But actually there was, and Mr. DeBase, you know, Mr. DeBase, you know, contradicted the, or controverted the grounds for termination, that he did something wrong at that, in that meeting, and furthermore, we, he testified that the HR rep, so the, that he recorded it on his iPhone, which we requested, and they say, oh, we can't find this recording, we don't have a recording, which is, again, evidence that, you know, a jury can listen to, if they believe, Mr. DeBase, that it was recorded, and the recording disappeared, that certainly goes to the credibility of the position. But regardless of all of that, above and beyond all of that, is it really, given every, what has just happened to Mr. DeBase, that he has been lied to, that he was going to be an E&S advisor, that he's been lied to, that his performance was hunky-dory, that all of this has turned on him, they all of a sudden want to put him on a pip, is it really a ground for termination when you've treated an employee that way, that he pushes back, and he says, you know, you know, you're stabbing me in the back, or he shanked me, is the term he used, and he pushes back in a meeting about that, because he feels that that he's being mistreated. Is that really a ground for termination? If so, can you go out and rile up an employee, get an employee to push back on you, get an employee to fight back at you, and then say, well, you fought back at us, that's why we're firing you. That's a question for the jury, ultimately. Or is it really a situation, given that we go back to 2018, the end of 2018, that we know they wanted to bring in younger employees. In 2019, we know that they promised him an E&S advisor position that didn't even exist. Well, Mr. DeBasi testifies that he was being told how good a job he was doing, everything's hunky-dory. Then he finishes training his replacement, Ms. Vaughn, and all of a sudden they're putting him on a pip, and all of a sudden they're firing him. Is that really credible? Could a reasonable jury listen to those facts and say, this is all a subterfuge, this is a pretext, that this is just the time had come to get rid of him, and he actually signed off on the pip in the end, but they still terminated him, that, you know, that this was preordained, that they were going to terminate him no matter what, and rather than making him sit out the 30 days or whatever it was, 90 days on the pip, they just went ahead and did it right then and there because he was pushing back on them. Is an employee not entitled to push back when he feels that he is being mistreated? In this case, when he feels that he is a subject of discrimination, do we really have that, is that really a standard that a court would ever want to adopt? Because if that is so, then it's not really that hard to provoke somebody. It's not that hard to get somebody to push back on you, and once they push back, you can say, well, now we have a reason to fire you. Is that really a standard that we would ever want to have? I would suggest the answer to that is no. Let me just make, since I've only got a minute left, let me comment briefly on the disability claim, which is a, you know, really a footnote here. It is a secondary claim, but the argument they've made, the only argument they've made, is that there can't be a disability claim here because he was released, returned to work, and I would just stress that there are probably millions of people in this country who have a legal disability, whether it be diabetes, whether it be whatever, the previous case you had, the asthma, all these people who have been cleared to return to go to work, they still have disabilities. The mere fact that you've been cleared to return to work does not mean that your disability goes away. In the case of Mr. DeBasi, he's still on medication for his cardiac condition to this day. He certainly has a disability, so the district court erred in that sense. With that, I will give you back my last 11 seconds. Thank you. Good morning, Your Honors, and may it please the Court. My name is Stephen Casada, and I'm counsel for the Appellee Motive Enterprises in this case. The question today, Your Honors, is whether the district court committed reversible error in dismissing the age and disability claims related to the termination of an employee who received two performance improvement plans, repeatedly engaged in unacceptable hostile conduct toward peers, received several complaints from different stakeholders and co-workers, and acted belligerently toward his manager and two HR representatives by raising his voice, interrupting, stating that he was being shanked, stating that the PIP was a farce, and using animated body language and hand gestures in that PIP meeting that lasted more than one hour. To get to the point, Your Honors, no, Judge Bennett did not commit reversible error when he decided Mr. DeBasi could not establish a prima facie case of either one of his claims. First, I'll discuss why the district court correctly dismissed Mr. DeBasi's age claim because he failed to make a prima facie case. Within that conversation, I'll talk about the forfeiture issue a little bit, and then second, Your Honors, I'll move on to the disability claim and why Mr. DeBasi failed to establish a prima facie case there. Regarding the age claim, the only element at issue as to this claim is the fourth element. Whether Mr. DeBasi was able to show, make a prima facie case by showing that he was either replaced by someone younger, replaced by someone outside of the protected category, or otherwise discriminated against on the basis of his age. In the district court, Motiva argued that Mr. DeBasi could not establish any prong of that fourth element. DeBasi's only response, and let me emphasize that, Mr. DeBasi's only response in the district court about why it was he believed he could establish a prima facie case was because he had been replaced by Candace Vaughn when his title changed from gasoline coordinator to heavy coordinator six months before the termination decision was made, and that title change decision was made by a completely different decision maker than the person who, at age 51, made the termination decision as to Mr. DeBasi, who was age 53. That position, Your Honors, is both flawed factually and legally. To quote Mr. DeBasi's brief on one claim, wrongful termination, it's undisputed that Mr. DeBasi was not replaced after he was terminated. But even if we were to entertain Mr. DeBasi's argument that the earlier title change somehow satisfies the prima facie case of his termination claim, it just doesn't bear out to be that way. Again, Mr. DeBasi testified in his deposition, and this is in the record at 781.25 to 783.3. It's a deposition site, so it's a little wonky there. But Mr. DeBasi unequivocally testified that he did not know why his title changed, and he did not know who made the decision to change his title. Again ---- JUSTICE SCALIA. But what about the evidence that sort of suggests this was done in steps? I mean, he basically alleged this was a plan. And rather than just go full frontal, straight at him, we're going to get rid of you because you're too old, they said, we're going to move you to a position, and we're going to bring in somebody to your old position, and you want to train her and bring her up, and she's 20 years younger, whatever, she's a beanstalk. And so we'll give you this other position out here. You know, it's going to be great. It'll be an advisor, kind of senior head of state, sort of, so to speak. But they really don't intend to do that. What they really intend to do is move him on out when the time is right and as soon as he's done training. I mean, doesn't that give enough evidence, in addition to his belief that he was fired because of his age, to go at least to the prima facie case? MR. WHITE. It does not, Your Honor. And first, that's not a question for the Court because it's not something dealing with what DeBasi argued satisfied his prima facie case. But even if it were, Your Honor, let's take a look at what Mr. DeBasi— JUSTICE SCALIA. Didn't he raise the idea that the Court shouldn't have treated his evidence piecemeal, that he should have looked at the totality of it? MR. WHITE. Your Honor, he did in passing. It was not something that was fully briefed. And in Mr. DeBasi's deposition— JUSTICE SCALIA. In passing where? MR. WHITE. In his response to the most—to the second motion for summary  JUSTICE SCALIA. Was that enough to preserve the issue? MR. WHITE. No, Your Honor. I do not believe it was. There was no case law cited. And in Mr. DeBasi's deposition, when I asked him, what are the claims—what are the decisions that you were complaining about that Motiva made, he complained of four things, the title change, not receiving the E&S advisor position, being put on a PIP for the second time, and the termination. He clearly listed those four independent claims as claims he was asserting against Motiva. But, Your Honor— JUSTICE SCALIA. What did he assert in his pleading? MR. WHITE. I'm sorry? JUSTICE SCALIA. What did he assert in his pleading? MR. WHITE. So the pleading is vague. And the pleading does reference those—the complaint is vague, but it does reference those employment decisions as being based on age. Your Honor, to address the other thrust of your question, I think let's take a look at the argument and then take a look at the record sites. And I think you'll find that those arguments do not bear in the record. So Mr. DeBasi argues—Motiva told Mr. DeBasi that it wanted to replace him with a younger employee, and its internal documents confirm this. Well, again, that's just contentions that are not matched by the record. In Mr. DeBasi's—at Record 1089, Mr. DeBasi's charge of discrimination is where this contention first appears. Mr. DeBasi, while at Motiva, never complained to anyone, to HR, to his managers. When he submitted the 10 questions in response to his PIP, when he was calling around employees right before he was about to come back to Motiva and telling people that he thought the PIP was B.S. and he was tired of the B.S., never once did Mr. DeBasi mention any sort of age-related comment while at Motiva. And he mentioned a lot while he was working at Motiva. This contention first when I was 54 years old. He was actually 53. Pat Moore talked about bringing in younger people and rotating them through the group. That is not, I want to replace you with somebody younger. Okay? Mr. DeBasi testified that Pat Moore said verbatim, rotate younger people in E&S. E&S is the department in which Mr. DeBasi worked. That's at Record 837. Again, nothing to do with the termination, nothing to do with getting rid of Mr. DeBasi, nothing to do with Mr. DeBasi's argument of we want to replace you with a younger employee. Then you've got the fact that he was replaced in the one position to the other with a younger employee. Granted, that wasn't the position from which he was terminated, but that's what the district court said. You can't show you were replaced in the position from which you were terminated, but he was replaced in his prior position and he said he didn't know why he was moved. So, I mean, you've got that fact plus the statement. Is that enough? It is not, Your Honor. There's absolutely no case law that I could find and I presume that Mr. DeBasi could find, because if there was, that would be pretty substantial for his argument, that says you can take a replacement, that you can graft these claims together, that you can transplant a replacement from an earlier employment action that happened six months before with a different decision maker where the employee testified he doesn't know why or who made the decision and then put that in the prima facie case about a termination. Not so much grafting claims, what about just using evidence that relates maybe to separate claims, but still it's evidence. Couldn't it also feed into the ultimate claim of termination? So Your Honor, here we're not talking about the evidence is what I'd say. I'd say that we're talking about what facts go into establishing the prima facie elements of a claim. This isn't some rigid application of the McDonnell-Douglas standard. That's not what went on here. Judge Bennett said these are the elements of a discharge termination, of a discharge claim for age. Are there facts to show that Mr. DeBasi could make that prima facie case? Again, Motiva pointed out in its motion for summary judgment that Mr. DeBasi could not satisfy any of the facts. So the change in title was done because Mr. DeBasi started performing work that was not related to the gasoline coordinator duties. And so therefore, Mr. DeBasi's title was changed to heavy oil coordinator. So was there a position that was a job description that was come up with and they posted it for somebody to apply to it and go to it? No, certainly not. It was a change in his title to align with what he was already doing. But Your Honor, the That seems to really support the plaintiff's viewpoint. I mean, there's a collection of things that have happened. And a savvy employer can, I'm hearing from you, can avoid the ramifications of it under Federal law. If you change somebody's title, he therefore has vacated his former position. You place a younger person in it. And among the other evidence at least asserted here is that this promised new position didn't exist and never would exist. So it does seem to me like moving some pieces on the table, getting ready to potentially get rid of the old employee. But this idea that he was moved out of the position, from what you just said, he wasn't moved out of anything. He was given a new title. And somebody else was given his old job, the younger person. Well, someone else was given his old title. Well, regardless, I don't want to play too much with words here. What we're talking about is the practical reality of how your client treated his client. No, Your Honor, because that actually is not the practical reality of how Mr. DeBase was treated. Mr. DeBase's title chain was changed to align with what he was doing, right? And then Mr. DeBase's contention is, is that this E&S advisor position never existed. That's simply not true. There was someone in the E&S advisor role at that time, Brent Rayburn. And it was communicated to Mr. DeBase that once Mr. Rayburn moved on from that role, he would then, the idea would be to then place him in that role. So the position very much existed at the time. And Mr. DeBase was told, and in the record, it's reflected, that that position became unavailable because of the decision to not add headcount. That was also the same reason why Mr. DeBase was not replaced after he was terminated. Because there was still a desire and an objective to not add headcount. So no, there was, there was... Yeah, it's almost a head reduction because he moves from his position, replaced by a younger woman. He's retitled. Whatever happens here, she takes his old job. He's in this job, promised a new job. That job doesn't materialize because that position's, I guess, eliminated. I thought it was sort of out there and we'll create one for you, but I can't remember exactly. And then when he loses his new job, it's not really replaced. So it just sounds like he was shuffled off the stage. And I guess, so the district court didn't consider this at all, as I read the opinion, when it was evaluating the termination claim. The district court says, transition from gasoline coordinator to heavy ore coordinator is timebarred, cannot be considered. So did the district court err by not considering the evidence as opposed to a claim? It certainly did not, Your Honor, because... I think our case law allows evidence, even if it's time barred, if it were to be a claim, to be considered for claims that are not time barred. Because we aren't talking about evidence. We're talking about... We're talking about the fact that he was moved or retitled or whatever happened from gasoline coordinator to heavy oils. Right. But we're talking about what fact establishes the prima facie case. And Motiva argued that Mr. DeBasi could not satisfy that fourth element as to any prong. And Mr. DeBasi's one response about why he could was because my title changed. Well, but if the title change was step one, the promise of a new position out there was step two, never existed. And then the termination was step three, while being replaced in his case. Why does that not meet a prima facie case? Because it's not showing, again, he says the prima facie case is about whether he was replaced from the claim that he's asserting. So with the termination, was he replaced? No, he was not. That's the one... Well, he could be terminated for age. I mean, some other action taken against him. The replacement's not key on that, right? But that's not what Mr. DeBasi argued in the district court. Mr. DeBasi presented a sole argument to Judge Bennett about why he could establish a prima facie case. And that was because I was replaced in a title change six months before by a different decision maker. And I don't know who made that decision or why that decision was made. That's the issue that was in the trial court. And why, Judge Wilson, to answer your question directly, no, that does not satisfy the prima facie case. Your Honors, I think just to also talk about what was going on at the time, the person who made the decision to realign Mr. DeBasi's title was Jeremy Burnham. At the time, he also made the decision at that same time in February of 2019, Mr. Burnham also made the decision to promote Madeline Stein. She was 58 years old. To address an earlier question, Judge Wilson, you stated that the ENS advisor position never existed. It certainly did exist. There was someone in that position. Brent Raybourn was his name. He was in the position. It was communicated to Mr. DeBasi. Once Brent Raybourn moves on from that position, we are going to slide, the intent is to slide you into it. So this idea that there was some fictional position being dangled in front of him that didn't really exist, that's just not borne out by the record, Your Honor. I've got four minutes left. I want to address why there's no legal basis for the proposition that Mr. DeBasi is advocating for today, that proposition of taking an event that happened from one discreet employment action six months before the termination decision made by a he's asserting about the termination decision. Mr. DeBasi cited the National Railroad case, the Amtrak case is, I believe, how it's called in his reply brief. That case simply doesn't apply. That case was about limitations in a Title VII case and when limitations begins to run when there's a discreet employment act versus when limitations can begin to run in a hostile work environment claim and there can be a continuing action issue there. That's not the issue at hand here. It just simply has nothing to do with a replacement from one discreet, unrelated time bar decision that a plaintiff says he's not complaining about, admits that he's not asserting, for the element of the claim that he is asserting that happened six months later. Further, if we were to actually try to bend National Railroad and make it fit into the case that Mr. DeBasi is making today, it still doesn't get there based on the evidence that's in the record. The citation that Mr. DeBasi argued talks about related discreet acts not being barred so long as the acts are independently discriminatory. Well, there's no evidence in the record that shows that these are somehow related discreet acts. We have different decision makers who made decisions for different reasons six months apart. And key, it says they also have to be independently discriminatory if we rely on the case that Mr. DeBasi cites. Just the fact that we're talking about having to go and graft together decisions to form the prima facie case of a claim that's being complained about goes to show that these matters are not independently discriminatory. If they were, they could stand on their own. Mr. DeBasi is saying they can't. I've got to go back and I've got to get something from something that happened six months ago and plug it in here. It's two different things of whether they're independently discriminatory or whether when you put the whole thing together, you see the big picture and you see that they were discriminatory. Well, Your Honor, if I understand your question... Obviously, the facts I'm talking about, he gets moved out of one position, no he doesn't, he gets a new title. And a younger person takes that position. Is there a new position he's been promised? Does that position really exist? You give us some evidence that you say it did. But when you put that whole together, you see that it's leading up to the termination and it's all supporting that. I would expect you to shake your head to it, but you don't need to. You can just give me an answer rather than shaking your head. But nonetheless, it seems to me that evidence becomes relevant to the case of a claim that is relevant in connection to other evidence at times. And you're saying you can't do that. You can't let one thing build on another. And I don't think that's what that case is talking about. Well, Your Honor, I'm saying that you can talk about what evidence you have, but you're not allowed to substitute different events to make a prima facie case as to a discharge decision. And let me just, with a minute left, I just want to touch on the conduct that arose between, this wasn't some sort of, oh, now you have a PIP, right? There were three significant complaints from folks that were made in March and April of 2019. Mr. DeBase admitted in his deposition that he has nothing to show that these were fake complaints. These were from Rick Mariner, Steven Mula, and one other employee, William Spears. That's at 928, 931, 933 in the record. There's record evidence that shows Mr. DeBase, in fact, was not training Ms. Vaughn, that she was routinely having to send him calendar invites that he would either accept or cancel. And in those calendar invites, she said, this time is not going to be used for X, Y, and Z, because what he'd do is come and dump binders. So it's not like this was some manufactured chain of events. Lastly, as to the disability claim, Your Honor, again, there's no prima facie case that was established there. The record shows that the limitation resolved by the time Mr. DeBase came back to work. His contention is, I was still on medication. Well, lots of people are on medication for lots of things. It doesn't show that there's a substantial limitation to rise to a disability under the ADA. All right, counsel. Thank you. May it please the Court. Mr. Kinsada said that our case is based purely on replacement. Of course, it's not. I pushed back earlier on the word subjective, because the correct word, the word I would use is circumstantial evidence. Circumstantial evidence of age discrimination, that starts with their own internal documents. They talk about beanstalks, they talk about, you know, the fact that they want to move him out in 2019, because he's a non-fit. That's in their own documents. And they told him that we are bringing in younger employees, we're circulating them through, whatever term you want to use. All these things are not based on replacement. It goes to a motivation of these supervisors to bring in younger employees and to get rid of Mr. DeBase. The E&S advisor issue is interesting. This is the first time I've heard this, I think, argument that whoever was the E&S advisor didn't leave, or whatever it was Mr. Kinsada just said. I'm not sure that's in the record, or I'm certainly not sure I've heard that before. But the bottom line is Mr. DeBase was told, you're going to be made E&S advisor. He wasn't told, you will be made E&S advisor if whoever is currently in that role moves on. If they told him that, that would be a different animal. If it was a contingent position, he might have reacted to the whole thing differently if he would have been told that maybe that position doesn't really exist. But that isn't what happened. He was told, you're going to be moved to E&S advisor. In that sense, this whole thing is sort of a cul-de-sac of sorts, that he was steered down this path, that you're going to be heavy oil coordinator, then you're going to be E&S advisor. But in fact, it's a dead end, because they were not going to keep him as heavy oil coordinator. We know that, because their own internal documents say he's a non-fit, move him in 2019. And the E&S advisor position never materialized, whether, for whatever reason, there wasn't a position there that he was going to be able to be moved into. In that sense, there was no place for him ever to go. Now, they say, Mr. Cassata says that Mr. DeBassi listed his claims in his deposition. Of course, that's not true. The claims are listed in complaints, not in depositions. What he listed was his complaints. He complained about, for example, the PIP, the being placed on PIP. He complained about the lack of an E&S advisor. And these are all components of what happened. But those aren't the claims. The claims are defined in the complaint. And the claim as to age is a termination claim. And all this other evidence are facts that support the termination claim, that it was the age was a but for cause of his termination. Finally, Mr. Cassata mentioned the complaints that were raised by Mr. Mariner, Mr. Mueller, which we discussed in our brief, but I'll just comment briefly. Mr. Mariner, actually, in his memo to the supervisor, said, we care for him and our interactions with him. We've had trouble with interactions, but that's been rare. We care for him. In the case of Mr. Mueller, Mr. DeBasi testified that he went and met with everybody, fixed up all the problems, and everything was great. And afterwards, his supervisor is saying everything's hunky-dory. This is an example of reaching out, looking for reasons to determinate somebody, looking for performance problems. Because you can always, in any situation, you can go through and find somebody who complained about something, some mistake that reasonable jury here could find that age was a but for cause of the termination. All right. It's helpful to have the argument from each side. We appreciate